FILED

2019 Jan-31 PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

2019 JAN 30  P 2: 57

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **BRETT LAFERRERA** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **VALIC FINANCIAL ADVISORS, INC (VFA) AND FINANCIAL INDUSTRY REGLATORY AUTHORITY (FINRA)** <br><br> **Defendants.** | Case No. <br><br> 7:19-CV-172-LSC |

## PLAINTIFF BRETT LAFERRERA'S PETITION TO CONFIRM ARBITRATION AWARD and REQUEST FOR ORDER TO EXPUNGE

Come now Brett LaFerrera, pro-se plaintiff in the above captioned matter, seeking confirmation of a FINRA arbitration award pursuant to the Federal Arbitration Act and U.S. Code Section 9 (9 U.S.C. § 9).

### Background

In or around December 29, 2015, the VALIC Companies initiated this dispute against the LaFerrera parties.

In March of 2016, the VALIC Companies initiated a FINRA arbitration proceeding against Brett LaFerrera and Jessica LaFerrera pursuant to their obligation under FINRA Rule 13200. As such, the matter before the court regarding Brett

LaFerrera and Jessica LaFerrera was stayed following the arbitration hearings. A motion to compel arbitration with Crimson Capital Group however was denied.

In or around March 29, 2017, following an appeal to the Eleventh Circuit Court, an order was issued staying the matter in its entirety against Crimson Capital Group.

In or around November 26, 2018, the parties notified the court that all issues were resolved and pursuant to the parties' Joint Stipulation of Dismissal with Prejudice (Doc. 86), the case was dismissed in its entirety.

However, upon agreement the parties signed a "Stipulation Regarding Hearing of Expungement Claim" that allowed for an "expungement hearing [to be] be held and be limited to expungement of disclosure information on the LaFerrera Respondents' Form U5."[1]

On November 27, 2018, the expungement hearing was held and an award subsequently issued.

### 1. The Expungement Hearing and Award

As it relates to Brett LaFerrera, two issues were before the panel. The first issue dealt with the termination disclosures on the Form U5, specifically the responses to questions 7B and 7F filed by VALIC Financial Advisors. The second issue dealt with an email forwarded to VALIC Financial Advisors by an HR representative at the University of Alabama that was subsequently labeled a customer complaint by the company. Once labeled a customer complaint, VFA felt obligated, pursuant to FINRA Rule 4530, to report the written complaint on Mr. LaFerrera's Form U5. The

---

[1] See ¶ 4 on Page 7 of the Award for FINRA Case #16-00910 attached as Exhibit 1.

email in question was written in response to the7F disclosure[2] made public by way
of FINRA's online resource for researching brokers, BrokerCheck®, by a former
customer of Mr. LaFerrera's, Jan Scurlock, ("the Scurlock Complaint").

Ms. Scurlock's email, written January 28, 2016, and subsequently labeled a
written customer complaint, reads in relevant part:

> "Morning Hiron, Please call me when you have time. I have questions
> about our former VALIC representative and his claim of VALIC's so
> called special advisors (that looks like now was really him). Did
> deduction from my pay go to VALC and he somehow set it up to go to
> be diverted from them to one of his companies? Or was the deduction
> from my pay going some to Valic and then some to his company? If
> some of the deduction was going straight to one of his companies does
> this need to be stopped separately or will my changing from Valic to
> TIAA stop money going to Valic and him? Sounds to me with the
> VALIC investigation that the money he as taking was not going to them
> to better manage my account and they had no special advisory group.
> This [this] money should have been going into my retirement account
> – not his pocket...**The document I found says he is under
> investigation...**"[3] (emphasis added).

Upon receipt of Ms. Scurlock's email, VFA filed a Form U5 amendment for Mr.
LaFerrera reporting a written customer complaint which reads "Customer alleged
Rep may have diverted funds meant to be deposited into her retirement account to
one of his companies"[4] This complaint remains in the Central Registration
Depository ("CRD") maintained by FINRA under the occurrence #1868785. It is

---

[2] 7F on the Form U5 asks "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of: (1) violating investment-related statues, regulations, rules or industry standards of conduct?" Mr. LaFerrera's Form U5 was marked affirmatively for this question. When 7F is answered affirmatively, the information is stored in the Central Registration Depository (CRD) and subsequently pulled through to public website of www.brokercheck.finra.org. The disclosure therefore available for the entire public to see read "The Individual Voluntarily resigned while under suspension and investigation by the firm for sales practice concerns and violations of firm privacy policy and Code of Conduct," It was because of this very disclosure that Ms. Scurlock instigated her email to HR.

[3] See Page 2 of Exhibit 2, the email from Ms. Scurlock that was deemed a written customer complaint.

[4] See Exhibit 3, an exact copy of Mr. LaFerrera's Form U5 filed November 26, 2018.

this event, and only this event, that Mr. LaFerrera seeks an order from the court granting expungement relief.

Unquestionably, the "document" Ms. Scurlock found was the publicly available disclosure available on www.brokercheck.finra.org, **which has been expunged** pursuant to the FINRA award due to the defamatory nature of the language. Ms. Scurlock *admits* in a subsequent email to Ms. Stiell that the BrokerCheck® website was the source of this information and even sends the link to BrokerCheck® for Ms. Stiell to investigate for herself.[5]

By Ms. Scurlock's own writings, her email, labeled a written customer complaint by VFA and subsequently disclosed on Mr. LaFerrera's Form U5, now available publicly on FINRA's BrokerCheck® website, was instigated *specifically* because of the disclosure to the affirmative answer of 7F. Without the 7F disclosure, Ms. Scurlock's email would never have been created, and thus a written customer complaint would never exist on Mr. LaFerrera's record.

During the expungement hearing, evidence was shown to the panel which proves unequivocally that Mr. LaFerrera did **not** "divert" or "attempt to divert" funds from Ms. Scurlock's retirement account to one of his companies.

Within hours of receiving Ms. Scurlock's email dated January 28, 2016, Ms. Stiell, the University of Alabama HR representative, replied to Ms. Scurlock and unequivocally stated that no money was being sent to Mr. LaFerrera or any company he may own;

> "Jan…You are a participant in the VALIC 403(b) plan. When money
> is payroll deducted from your check, that money is sent directly from
> the University to VALIC, not to any individual broker or representative.
> Your money is also not being sent to any other company."[6]

---

[5] See Exhibit 4.
[6] See page 1 of Exhibit 2, an email responding to Ms. Scurlock from Hiron Stiell.

In addition, to this clear proof that Ms. Scurlock's concerns are unfounded, evidence was shown to the panel that VALIC Financial advisors researched Ms. Scurlock's inquiry and found that **no money was missing from her account**. VALIC even sent Ms. Scurlock confirmation of this finding in a letter dated March 7, 2016 in which the company writes:

> "Additionally, please accept this letter as confirmation our research has found **all payroll deductions taken by your employer have been successfully applied to your VALIC accounts** as regular contributions and there is **no evidence of illicit activity** regarding these payroll deductions."[7]

Finally, presented to the panel was an affidavit signed under oath by Ms. Scurlock stating

> "there **has not** and **is not** any money missing from my investment accounts with my employer the University of Alabama in anyway related to Mr. LaFerrera...there **has not** and **is not** any money which was deducted from my payroll and divert to any companies Mr. LaFerrera may own or have any type of ownership interests concerning."[8]

Therefore in or around January 10, 2019, the public award was issued granting the LaFerrera's request for expungement. As it relates to Brett LaFerrera, the award reads in part;

> "The Panel recommends the expungement of the "Yes" answer to Question 7F(1) on the Form U5 filed by VALIC Financial Advisors, Inc. on November 26, 2018 from the registration records for Respondent Brett LaFerrera (CRD# 2496912) maintained by the CRD. The Panel recommends that the answer be changed to "No" and the

---

[7] See Exhibit 5, a letter from VALIC to Ms. Scurlock.
[8] See affidavit of Ms. Scurlock attached as Exhibit 6.

accompanying Termination Disclosure Reporting page be deleted in its entirety. **These recommendations shall apply to all previous and subsequent disclosures concerning this event, including but not limited to, the Form U4 filed on January 25, 2016 by MSI Financial Service.**" (emphasis added).

Because Ms. Scurlock admits that her email was prompted by the information found on BrokerCheck* (which was displayed because of the affirmative finding to 7F) the customer complaint is a subsequent disclosure pertaining to "this event" and by way of the panel's award should be deleted in its entirety. [9]

### 2. FINRA Rules for Expungement of Customer Complaint

Pursuant to the panel's award, the termination disclosures for 7B and 7F have already been deleted in their entirety. The disclosure related to Ms. Scurlock however was filed as a customer complaint, and therefore FINRA rules require more than just an award in order to delete the entry.

FINRA rule 2080 governs the expungements of Customer Complaints and states (a) Member or associated persons seeking to expunge information from the CRD system arising from disputes with customers **must obtain an order from a court of competent jurisdiction** directing such expungement or confirming an arbitration award containing expungement relief. It is this order and/or confirmation that Mr. LaFerrera seeks now.

Further Rule 2080(b) requires that FINRA be named as an additional party unless the relief is based on affirmative judicial findings that one or more of the following are true.

---

[9] See Exhibit 7 in which Mr. Zailskas, the case coordinator for FINRA, confirms that the language provided here addresses the issue of Ms. Scurlock's complaint.

(A) the claim, allegation or information is factually impossible or clearly erroneous;

(B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or

(C) the claim, allegation or information is false.

Based on the evidence presented to the panel and included even in this filing, clearly Ms. Scurlock's reported concerns are ill-founded and false. Ms. Scurlock's employer, the University of Alabama **confirms that no money is missing** from her account, VALIC by way of communication with Ms. Scurlock **confirms no money is missing** and further no illicit activity occurred and Ms. Scurlock herself **states no money is missing** from her accounts. Clearly, the disclosure on Mr. LaFerrera's form U5 is false, erroneous and factually impossible. What's more, Mr. LaFerrera was not involved in any sales practice violation because no sale practice violation occurred. Not only is FINRA Rule 2080(1) met, it is met in all three reasons granting expungement.

Finally, the panel was presented with an email from Ms. Scurlock's representative, Mr. Standridge, that Ms. Scurlock has no objection to the request for expungement[10]. In addition, counsel for VALIC Financial Advisors, present at the expungement hearing before the FINRA panel, did *not* object to the expungement of this customer complaint, but in fact supported the request.[11]

## Conclusion

---

[10] An exact copy of Mr. Standridge's email is attached as Exhibit 8.

[11] As noted in the award, the expungement hearing was inadvertently not recorded and thus the record supporting this statement is unavailable otherwise the transcript would be presented to the court which clearly demonstrates that VFA, through counsel, made statements to the panel that this complaint should be expunged.

There is no legitimate reason to allow this false customer complaint to remain on Mr. LaFerrera's Form U5, Form U4 or any public disclosure page found on FINRA's BrokerCheck®. Conversely, there are ample reasons to remove it. The allegation of theft or misappropriation of funds, which is the category under which VFA filed this email as a complaint, is a serious and even potentially criminal allegation. Disclosures such as this carry the potential to unequivocally damage an individual's reputation in an industry that relies on and is based largely in trust. Mr. LaFerrera has sought, for over three years, relief from this false and misleading accusation[12].

WHEREFORE, the premise considered, Mr. LaFerrera seeks an order under the Federal Arbitration Act and U.S. Code Section 9 (9 U.S.C. § 9) confirming the award issued in FINRA case 16-00910 and granting expungement of the customer complaint labeled occurrence #1868785 from the registration records for Brett LaFerrera (CRD# 2496912) based on the findings that (a) the claim, allegation or information is factually impossible and clearly erroneous, (b) Mr. LaFerrera was not involved in any investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds and (c) the claim, allegation or information is false, in compliance with FINRA Rule 2080[13].

Respectfully submitted January 30, 2019

Brett LaFerrera, pro se
1312 12th S. E
Tuscaloosa, AL 35404
205-310-8749

[12] Mr. LaFerrera has attempted to compel FINRA arbitration with Ms. Scurlock however Ms. Scurlock declined to arbitrate the issue. Based on FINRA rules, Ms. Scurlock was not obligated to arbitrate the issue with Mr. LaFerrera and therefore FINRA declined to hear the request for expungement. Mr. LaFerrera then turned to the civil courts and filed a complaint in the District Court of Tuscaloosa County, cv-2017-900115 seeking expungement however the honorable Judge Almond declined to rule on the request citing "improper jurisdiction".
[13] Exhibit 9.

I certify that I have sent via certified mail a copy of this petition for confirmation of arbitration award to the following parties.

**VALIC Financial Advisors, Inc.**

c/o Corporation Service Company

641 South Lawrence St

Montgomery, Alabama 36104

**FINRA Dispute Regulation, Inc.**

c/o Corporation Service Company

641 South Lawrence St

Montgomery, Alabama 36104

Exhibit 1

**Award**
**FINRA Office of Dispute Resolution**

In the Matter of the Arbitration Between:

Claimants
VALIC Financial Advisors, Inc. and The
Variable Life Insurance Company

Case Number: 16-00910

vs.

Respondents
Brett LaFerrera
Jessica LaFerrera

Hearing Site: Birmingham, Alabama

vs.

Third-Party Respondents
Madison Bess
Ashley Wayne Folkes
Gary Lawson Grigsby
Paige Watson Lombardy
Rance Kevin Morgan
Vernon Keith Roberts

Nature of the Dispute: Member and Non-Member vs. Associated Persons vs.
Associated Persons

## REPRESENTATION OF PARTIES

VALIC Financial Advisors, Inc. ("VFA") and The Variable Life Insurance Company
("VALIC") (hereinafter collectively referred to as "Claimants" or "the VALIC Companies")
were represented by Michael Rollin, Esq., Maritza Dominguez Braswell, Esq. and Kasey
Johnson, Esq., Rollin Braswell Fisher LLP, Greenwood Village, Colorado until April 17,
2018. Thereafter, Claimants were represented by Carole G. Miller, Esq. and Matthew I.
Penfield, Esq., Bressler, Amery & Ross, P.C., Birmingham, Alabama.

Brett LaFerrera and Jessica LaFerrera (hereinafter collectively referred to as
"Respondents" or "the LaFerrera Respondents") were represented by Brian J. Neville,
Esq., Robert Miller, Esq. and David J. Lee, Esq., Lax & Neville LLP, New York, New
York until December 23, 2016. Thereafter, the LaFerrera Respondents appeared pro
se.

For Madison Bess ("Bess"), Ashley Wayne Folkes ("Folkes"), Gary Lawson Grigsby
("Grigsby"), Paige Watson Lombardy ("Lombardy"), Rance Kevin Morgan ("Morgan"),
and Vernon Keith Roberts ("Roberts") ("the Third-Party Respondents"): Carole G. Miller,
Esq. and Matthew I. Penfield, Esq., Bressler, Amery & Ross, P.C., Birmingham,

Alabama. Counsel appeared for the Third-Party Respondents for the limited purpose of disputing FINRA's jurisdiction over the Third-Party Respondents.

## CASE INFORMATION

Statement of Claim filed on or about: March 30, 2016.
The VALIC Companies signed the Submission Agreement: March 30, 2016.

Statement of Answer and Affirmative Defenses ("Statement of Answer") filed by the LaFerrera Respondents on or about: May 9, 2016.
The LaFerrera Respondents did not file Submission Agreements.

Counterclaims and Third-Party [Claim] ("Counterclaim and Third-Party Claim") filed by the LaFerrera Respondents on or about: May 24, 2017.

The Third-Party Respondents did not submit Answers or file Submission Agreements.

Statement of Answer and Defenses to Counterclaims ("Answer to Counterclaim") filed by Claimants on or about: June 14, 2017.

## CASE SUMMARY

In their Statement of Claim, Claimants asserted the following causes of action: violation of Alabama Trade Secret Act, Ala. Code § 8-27-1 *et seq.*; violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; violation of the LaFerrera Respondents' Registered Representative agreements ("RRAs") through their improper use, disclosure and retention of the VALIC Companies' client information; violation of the LaFerrera Respondents' RRAs through their improper solicitation and inducement; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; tortious interference with contractual and other business relations; and unjust enrichment. The causes of action relate to the LaFerrera Respondents' alleged misuse, disclosure and misappropriation of trade secret and confidential information upon their termination of employment with the VALIC Companies in mid-December 2015.

Unless specifically admitted in the Statement of Answer, the LaFerrera Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

In their Counterclaim and Third-Party Claim, the LaFerrera Respondents asserted the following causes of action: defamation on Form U5 (Respondents Brett and Jessica LaFerrera against Claimants); defamation on Form U4 (Respondents Brett LaFerrera against Claimants); defamation to regulators and FINRA (against Claimants and Third-Party Respondents Roberts and Grigsby); defamation per se (against Claimants and Third-Party Respondents); tortious business interference (against Claimants and Third-Party Respondents); unjust enrichment (against Claimants and Third-Party Respondents Lombardy, Folkes and Morgan); unpaid compensation and breach of contract (against Claimants); intentional infliction of pain and suffering (against Claimants and Third-Party Respondents); and fraud, misrepresentation and deceit pursuant to Ala. Code § 6-5-101 (against Third-Party Respondent Bess). The causes of action relate to the VALIC

Case 7:19-cv-00172-LSC   Document 1   Filed 01/31/19   Page 13 of 52

Companies' alleged defamation of the LaFerrera Respondents after their employment relationship ended.

Unless specifically admitted in the Answer to Counterclaim, Claimants denied the allegations made in the Counterclaim and asserted various affirmative defenses.

## RELIEF REQUESTED

In the Statement of Claim, Claimants requested that the Panel issue a permanent injunction: (i) enjoining the LaFerrera Respondents from directly or indirectly retaining, disclosing, or using any and all property of the VALIC Companies including the VALIC Companies' Client Information; (ii) enjoining the LaFerrera Respondents, for one year after the entry of the injunction, from directly or indirectly inducing or attempting to induce any Protected Customer to end or alter his relationship with the VALIC Companies; (iii) requiring the LaFerrera Respondents to (a) return all of the VALIC Companies' Client Information in their possession, regardless of the form in which it is stored or maintained, (b) after returning such information, delete any and all copies of such information, regardless of the form in which it is stored or maintained, and provide a certification that they have complied with each of the foregoing and (b)(y) they have not disclosed any of the VALIC Companies' Client Information to any third party not a Party hereto. In the event the LaFerrera Respondents are unable to provide the certification as to part (iii)(b)(y), above, the LaFerrera Respondents shall provide a full accounting of all disclosures of the VALIC Companies' Client Information. Such accounting will include, at a minimum, the VALIC Companies' Client Information disclosed, the recipient(s) of such information, and the date of disclosure; (iv) that the VALIC Companies be awarded consequential damages against the LaFerrera Respondents related to any economic loss resulting from the LaFerrera Respondents conduct; (v) that the LaFerrera Respondents indemnify and hold the VALIC Companies harmless against any losses and harm suffered as a result of any breach of the LaFerrera Respondents' RRAs; (vi) that the LaFerreras be required to disgorge any profits, commissions or other monies earned by it as a result of the LaFerrera Respondents' unlawful actions described herein; (vii) that the VALIC Companies be awarded exemplary damages from the LaFerrera Respondents; (viii) that the VALIC Companies be awarded pre-judgment and post-judgment interest against the LaFerrera Respondents on all damages recovered against it; (ix) that the VALIC Companies be awarded their costs, including reasonable attorneys' fees, incurred in this action; (x) that the VALIC Companies be awarded all available reimbursement for applicable fees and surcharges; and (xi) that the VALIC Companies be awarded such other and further relief as the Panel deemed just and appropriate under the circumstances.

In the Statement of Answer, the LaFerrera Respondents requested that the Panel: dismiss the VALIC Companies' claims in their entirety; deny the VALIC Companies' request for a permanent injunction; and award the LaFerrera Respondents such additional and further relief as deemed just and proper.

In their Counterclaim, the LaFerrera Respondents requested: expungement of Respondent Brett LaFerrera's Form U5 in its entirety in regard to the termination from Claimant VALIC Financial Advisors, Inc., specifically noting the reason for termination as voluntary with no further explanation and the "YES" response to questions 7B and 7F

be replaced with "NO"; expungement of Respondent Jessica LaFerrera's Form U5 in its entirety in regard to the termination from Claimant VALIC Financial Advisors, Inc., specifically the reason for termination be changed to "OTHER" and the language to follow be changed to "SERVICE NO LONGER REQUIRED" and the "YES" responses to questions 7B and 7F be replaced with "NO"; that the VALIC Companies be enjoined from defaming the LaFerrera Respondents; that the LaFerrera Respondents be awarded all commissions rightfully earned from any business submitted up to and through December 21, 2015, in an amount to be determined; that the LaFerrera Respondents be awarded lost commissions and future earnings from assets under management at AIG Annuities in an amount to be determined but not less than $3,000,000.00; that the LaFerrera Respondents be awarded lost commissions and future earnings from assets under management at Prudential in an amount to be determined but not less than $1,000,000.00; that the LaFerrera Respondents be awarded loss of future income in an amount to be determined but not less than $10,000,000.00; that Respondent Brett LaFerrera be awarded loss of future pension in an amount to be determined; that the LaFerrera Respondents be awarded pre-judgment interest and post-judgment interest against the VALIC Companies on all damages recovered against them; that the LaFerrera Respondents be awarded exemplary damages; that the LaFerrera Respondents be awarded costs, including attorneys' fees, incurred in this action and subsequent expungement of the falsified written customer complaint reported on Respondent Brett LaFerrera's Form U4; and that the LaFerrera Respondents be awarded all available reimbursement for applicable fees and surcharges.

In their Third-Party Claim, the LaFerrera Respondents requested that judgment be entered against Third-Party Respondents Lombardy, Folkes and Morgan in their favor and that the Panel order: that the LaFerreras be awarded consequential damages against the above-named parties related to economic loss resulting from the Third-Party Respondents; that Third-Party Respondents Lombardy, Folkes and Morgan be required to disgorge any profits, commissions or other monies earned as a result of their unlawful actions; that Third-Party Respondents Lombardy, Folkes and Morgan be sanctioned for violating FINRA Rules 2010 and 2140; that Third-Party Respondents Lombardy, Folkes and Morgan be enjoined from defaming the LaFerrera Respondents; and that the LaFerrera Respondents be awarded exemplary damages from the above-named parties. In their Third-Party Claim, the LaFerrera Respondents also requested that judgment be entered against Third-Party Respondent Bess and that the Panel order: that the LaFerrera Respondents be awarded consequential damages against Third-Party Bess related to the economic loss resulting from Third-Party Bess; and that the LaFerrera Respondents be awarded exemplary damages from Third-Party Bess. In their Third-Party Claim, the LaFerrera Respondents also requested that judgment be entered against Third-Party Respondents Roberts and Grigsby and that the Panel order: that the LaFerrera Respondents be awarded consequential damages against Third-Party Respondents Roberts and Grigsby related to economic loss resulting from Third-Party Respondents Roberts and Grigsby; that Third-Party Respondents Roberts and Grigsby be sanctioned for violating FINRA Rules 2010 and 2140; that Third-Party Respondents Roberts and Grigsby be enjoined from defaming the LaFerrera Respondents; and that the LaFerrera Respondents be awarded exemplary damages from Third-Party Respondents Roberts and Grigsby.

FINRA Office of Dispute Resolution
Arbitration No. 16-00910
Award Page 5 of 12

In their Answer to Counterclaim, the VALIC Companies did not delineate a specific relief request.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

The LaFerrera Respondents did not file with FINRA Office of Dispute Resolution a properly-executed Submission Agreement but are required to submit to arbitration pursuant to the Code of Arbitration Procedure ("Code") and, having answered the claim and appearing at the hearing, are bound by the determination of the Panel on all issues submitted.

On or about May 3, 2016, Claimants filed a Motion for Leave to File a Motion for Sanctions in which they requested that the Panel grant leave for Claimants to file a Motion for Sanctions for spoliation of evidence against Respondents prior to the in-person hearing. The LaFerrera Respondents did not file a written response. The Panel did not rule on Claimant's Motion for Leave to File a Motion for Sanctions prior to the hearing. The Panel never ruled on this Motion, and it was deemed moot as a result of the parties' settlement described below.

The Panel held hearings on May 10-12, 2016, and July 12-14, 2016 on Claimants' request for permanent injunction. On or about, July 28, 2016, the Panel issued an Order in which it denied Claimants' request for permanent injunction.

On or about May 24, 2017, the LaFerrera Respondents filed a Counterclaim and Third-Party Claim which added claims against Claimants and the Third-Party Respondents.

On or about June 14, 2017, the Third-Party Respondents filed a Motion to Oppose Addition of Third-Party Respondents in which they argued, among other things, that the Panel could not grant a motion to add third parties and claims at this late stage in the proceeding without denying the individuals fundamental due process. On or about June 16, 2017, the LaFerrera Respondents filed an Opposition to Motion to Oppose Addition of Third-Party Respondents in which they argued, among other things, that the Third-Party Respondents would not be prejudiced because no testimony or allegations had been made in relation to them at this stage in the proceeding.

On or about June 15, 2017, Claimants filed correspondence with FINRA Office of Dispute Resolution in which, among other things, they requested that the Panel (1) set a hearing for the LaFerrera Respondents' [Motion to Add] Counterclaim and Third-Party Claims, and (2) hold Respondents' Counterclaim and Third-Party Claim—together with Claimants' Answer—in abeyance until a decision is rendered after the aforementioned hearing. On or about June 16, 2017, the LaFerrera Respondents filed correspondence in which they requested, among other things, that their Counterclaim be heard in a full and fair hearing. On or about June 28, 2017, the LaFerrera Respondents filed a Response to Claimants June 15, 2017, correspondence in which they argued that the Panel should accept the LaFerrera Respondents' Counterclaim and Third-Party Claim.

FINRA Office of Dispute Resolution
Arbitration No. 16-00910
Award Page 6 of 12

On or about June 30, 2017, the Panel held a telephonic hearing with the parties and proposed Third-Party Respondents to discuss the status of the pleadings filed by the LaFerrera Respondents and to consider the responses filed by Claimants and the proposed Third-Party Respondents. After hearing argument from counsel, the Panel issued an Order in which it, among other things: (1) dismissed all of the LaFerrera Respondents claims against the Third-Party Respondents, and (2) dismissed three counts of the LaFerrera Respondents' Counterclaim against Claimant VALIC.

On or about September 6, 2017, Claimants filed a Renewed Motion for Sanctions and for Spoliation of Evidence in which they argued, among other things, that the Panel should sanction the LaFerrera Respondents by dismissing several of their Counterclaim counts which pertained to a laptop Respondent Brett LaFerrera destroyed with a sledgehammer and discarded. On or about September 18, 2017, the LaFerrera Respondents filed an Opposition to Claimants' Renewed Motion for Sanctions in which they argued, among other things, that Claimants failed to meet the legal standard in support of their spoliation allegations. On or about September 22, 2018, Claimants filed a Reply in Support of Their Renewed Motion for Sanctions and Spoliation of Evidence in which they argued, among other things, that due to the willful and complete destruction of the laptop, dismissal of the LaFerrera Respondents' Counterclaim and an adverse inference on Claimants' affirmative claims were appropriate. After hearing oral argument from the parties, the Panel issued an Order dated October 5, 2017, in which it (1) denied Claimants' request to dismiss four counts of the LaFerrera Respondents' Counterclaim, (2) granted Claimants' request that the Panel draw adverse inferences against the LaFerrera Respondents for the destruction and discarding of the laptop, and (3) indicated that the Panel would infer without further proof at the hearing on damages that the destroyed laptop contained: (a) confidential client information and trade secrets belonging to Claimants and (b) a business plan that the LaFerrera Respondents prepared for a non-party brokerage firm that contained confidential client information and trade secrets belonging to Claimants.

On or about December 4, 2017, the LaFerrera Respondents filed a Motion to Compel in which, among other things, they indicated that Claimants had a "blatant disregard for privileged communications" in the materials Claimants had produced in their latest production. On or about December 6, 2017, Claimants filed a Response to the Motion to Compel [and Cross-Motion for Sanctions] in which they argued that the LaFerrera Respondents should be sanctioned for bringing a frivolous motion. On or about December 11, 2017, the LaFerrera Respondents filed a Reply in Support of their Motion to Compel in which they requested, among other things, that the Panel sanction Claimants from utilizing any evidence at hearing that has been requested and not produced in violation of FINRA Rules. On or about December 18, 2017, the Panel issued an Order in which it (1) denied the LaFerrera Respondents' Motion to Compel and (2) denied Claimants' Cross-Motion for Sanctions.

On or about December 18, 2017, the LaFerrera Respondents filed a Motion for Sanctions for Spoliation of Evidence in which they argued, among other things, that Claimants failed to preserve a USB drive for forensic testing and review. On or about December 28, 2018, Claimants filed a Response to Respondents' Motion for Sanctions for Spoliation of Evidence in which they argued, among other things, that the USB drive

Case 7:19-cv-00172-LSC   Document 1   Filed 01/31/19   Page 17 of 52

in question was never in Claimants' possession or control. The Motion was rendered moot by the parties' settlement and stipulation detailed below.

On or about January 3, 2018, the original Chairperson in this matter withdrew. On or about January 10, 2018, at the request of the parties, FINRA Office of Dispute Resolution staff contacted the remaining Panelists to see if either would object to being appointed Chairperson in light of the original Chairperson's withdrawal. On or about January 1, 2018, the parties agreed to have Arbitrator Gregory serve as Chairperson for the duration of the case.

On or about September 25, 2018, the LaFerrera Respondents filed a Motion for Discovery Sanctions in which they argued, among other things, that Claimants have a history of withholding critical evidence and should be sanctioned. On or about October 5, 2018, Claimants filed a Response to Respondents' Motion for Discovery Sanctions and Cross-Motion for Discovery Sanctions in which they argued, among other things, that Claimants had produced all responsive documents and that the LaFerrera Respondents should be sanctioned for failing to produce documents in accordance with the Panel's prior orders. On or about October 10, 2018, the LaFerrera Respondents filed a Reply in Support of Discovery Sanctions and Opposition to Claimants' Cross-Motion for Discovery Sanctions in which they argued, among other things, that Claimants' use of altered evidence had been part of their litigation strategy to paint a false narrative. As explained below, the Panel never ruled on this Motion and it was rendered moot as a result of the parties' settlement.

On or about October 24, 2018, the parties notified FINRA that the case had settled. Therefore, the Panel made no determinations with respect to any of the relief requested in the Statement of Claim or Counterclaim, except for the expungement relief requested by the LaFerrera Respondents as detailed below.

On or about October 24, 2018, the parties submitted a Stipulation Regarding Hearing of Expungement Claim in which the parties agreed to the following, among other things: (1) the VALIC Companies and the LaFerrera Respondents withdrew their respective pending Motions for Discovery Sanctions and (2) an expungement hearing would be held and be limited to expungement of disclosure information on the LaFerrera Respondents' Form U5.

The Panel conducted an in-person hearing on November 27, 2018, so the parties could present oral argument on the issues the parties stipulated to in their October 24, 2018, correspondence. The November 27, 2018, hearing sessions were inadvertently not recorded.

The Panel noted that the LaFerrera Respondents did not previously file a claim requesting expungement of the same disclosures in the CRD.

The parties present at the hearing have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the recorded, in-person hearing, and the post-hearing submissions (if any), the Panel has decided in full and final resolution of the issues submitted for determination as follows:

### Brett LaFerrera

The Panel recommends the expungement of the "Yes" answer to Question 7F(1) on the Form U5 filed by VALIC Financial Advisors, Inc. on November 26, 2018, from the registration records for Respondent Brett LaFerrera (CRD# 2496912) maintained by the CRD. The Panel recommends that the answer be changed to "No" and the accompanying Termination Disclosure Reporting page be deleted in its entirety. These recommendations shall apply to all previous and subsequent disclosures concerning this event, including but not limited to, the Form U4 filed on January 25, 2016 by MSI Financial Services.

In addition, the Panel recommends that the Termination Explanation on the Form U5 filed on January 4, 2016 by VALIC Financial Advisors, Inc. be expunged and appear blank. The reason for amending the termination explanation shall be expunged and appear blank.

The Panel further recommends the expungement of the "Yes" answer to question 7B on the Form U5 filed by VALIC Financial Advisors, Inc. on November 26, 2018 be expunged and that the answer be changed to "No" and the Disclosure Reporting Page be deleted in its entirety.

The above recommendations are based on the defamatory nature of the information. The registration records are not automatically amended to include the changes indicated above. Respondent Brett LaFerrera must forward a copy of this Award to FINRA's Registration and Disclosure Department for review.

### Jessica LaFerrera

The Panel recommends the expungement of the "Yes" answer to Question 7F(1) on the Form U5 filed by VALIC Financial Advisors, Inc. on November 26, 2018, from the registration records for Respondent Jessica LaFerrera (CRD# 5612540) maintained by the CRD. The Panel recommends that the answer be changed to "No" and the accompanying Termination Disclosure Reporting page be deleted in its entirety. These recommendations shall apply to all previous and subsequent disclosures concerning this event, including but not limited to, the Form U4 filed on January 25, 2016 by MSI Financial Services.

In addition, the Panel recommends that the current Reason for Termination on the foregoing Form U5 be expunged and changed to "Voluntary" and the Termination Explanation be changed to: "Services no longer required."

The Panel further recommends the expungement of the "Yes" answer to question 7B on the Form U5 filed by VALIC Financial Advisors, Inc. on April 15, 2016. The

> Panel recommends that the answer be changed to "No" and the disclosure
> reporting page be deleted in its entirety. These recommendations shall apply to
> all previous and subsequent disclosures concerning this event.
>
> The above recommendations are based on the defamatory nature of the
> information. The registration records are not automatically amended to include
> the changes indicated above. Respondent Jessica LaFerrera must forward a
> copy of this Award to FINRA's Registration and Disclosure Department for
> review.

The Panel provided the following explanation:

The expungement recommendations are based on the defamatory nature of the
information in the CRD but are not findings that the LaFerrera Respondents have
established a claim for defamation under governing law. The Panel finds that VALIC
Financial Advisors, Inc. committed no wrongdoing with regard to the terminations of the
LaFerrera Respondents and its obligations to file Form U5s.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Office of Dispute Resolution assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$ 1,700.00 |
| Counterclaim Filing Fee | =$ 2,250.00 |

*The filing fee is made up of a non-refundable and a refundable portion.

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or
to the member firm(s) that employed the associated person(s) at the time of the event(s)
giving rise to the dispute. Accordingly, as a party, VALIC Financial Advisors, Inc. is
assessed the following:

| | |
|---|---|
| Member Surcharge | =$ 1,900.00 |
| Member Process Fee | =$ 7,000.00 |

### Postponement Fees
Postponements granted during these proceedings for which fees were assessed or
waived:

| | |
|---|---|
| April 13, 2016, postponement by Claimants | =$ 1,500.00 |
| June 1 – June 3, 2016, postponement by Respondents | =$ 1,500.00 |
| September 26-28, 2017, postponement by Claimants | =$ 1,500.00 |
| Total Postponement Fees | =$ 4,500.00 |

The Panel has assessed $1,500.00 jointly and severally to Claimants.

FINRA Office of Dispute Resolution
Arbitration No. 16-00910
Award Page 10 of 12

The Panel has assessed $3,000.00 of the adjournment fees jointly and severally to Respondents.

## Injunctive Relief Fees

Injunctive relief fees are assessed to each member or associated person who files for a temporary injunction in court. Parties in these cases are also assessed arbitrator travel expenses and costs when an arbitrator is required to travel outside his or her hearing location and additional arbitrator honoraria for the hearing for permanent injunction. These fees, except the injunctive relief surcharge, are assessed equally against each party unless otherwise directed by the Panel.

**Claimant VFA is assessed:**
Injunctive relief surcharge                                                                =$2,500.00

**Claimants VFA and Valic are jointly and severally assessed:**
Arbitrator travel expenses and costs                                          =$1,544.22

**Respondents are jointly and severally assessed:**
Arbitrator travel expenses and costs                                          =$1,544.22

## Hearing Session Fees and Assessments

The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

One (1) pre-hearing session with a single arbitrator @ $450.00/session       =$      450.00
Pre-hearing conference:    May 5, 2016                        1 session

Eight (8) pre-hearing sessions with the Panel @ $1,500.00/session        =$ 12,000.00
Pre-hearing conferences:  April 15, 2016                     1 session
                          May 27, 2016                       1 session
                          May 24, 2017                       1 session
                          June 30, 2017                      1 session
                          September 7, 2017                  1 session
                          September 27, 2017                 1 session
                          January 29, 2018                   1 session
                          May 7, 2018                        1 session

Twenty-six (26) hearing sessions @ $1,500.00/session                     =$39,000.00
Hearing Dates:            May 10, 2016                       2 sessions
                          May 11, 2016                       3 sessions
                          May 12, 2016                       2 sessions
                          July 12, 2016                      3 sessions
                          July 13, 2016                      3 sessions
                          July 14, 2016                      2 sessions
                          February 12, 2018                  2 sessions
                          February 13, 2018                  3 sessions
                          February 14, 2018                  2 sessions

FINRA Office of Dispute Resolution
Arbitration No. 16-00910
Award Page 11 of 12

|  | February 15, 2018 | 2 sessions |
|  | February 16, 2018 | 2 sessions |

Two (2) hearing sessions on expungement request @ $1,500.00/session  =$ 3,000.00
Hearing Date:              November 27, 2018           2 sessions

| Total Hearing Session Fees | =$54,450.00 |

The Panel has assessed $26,475.00 of the hearing session fees jointly and severally to Claimants.

The Panel has assessed $27,975.00 of the hearing session fees jointly and severally to Respondents.

All balances are payable to FINRA Office of Dispute Resolution and are due upon receipt.

FINRA Office of Dispute Resolution
Arbitration No.  16-00910
Award Page 12 of 12

## ARBITRATION PANEL

| | | |
|---|---|---|
| Steven P. Gregory | - | Non-Public Arbitrator, Presiding Chairperson |
| Roslyn Barbee | - | Public Arbitrator |
| Cynthianther May | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

## Concurring Arbitrators' Signatures

Steven P. Gregory
Non-Public Arbitrator, Presiding Chairperson

12/28/2018
Signature Date

Roslyn Barbee
Public Arbitrator

2 Jan 2019
Signature Date

Cynthianther May
Public Arbitrator

January 2 2019
Signature Date

January 10, 2019

Date of Service (For FINRA Office of Dispute Resolution office use only)

Exhibit 2

## Hiron Stiell

| | |
|---|---|
| **From:** | David Bertanzetti <█████████████████ |
| **Sent:** | Thursday, January 28, 2016 12:06 PM |
| **To:** | Hiron Stiell |
| **Cc:** | Sandra Abrams |
| **Subject:** | Re: URGENT: Let's discuss |

Don't do anything with this yet. I called Jon Garner and he is seeking guidance from legal.

Sent from my iPhone

On Jan 28, 2016, at 9:56 AM, Hiron Stiell <█████████████████████████████> wrote:

Please review my response below and let's discuss it before I reply to this employee.

Jan,

I am sorry to hear that you have these concerns, but I will share your concerns with my superiors.

You are a participant in the VALIC 403(b) plan. When money is payroll deducted from your check, that money is sent directly from the University to VALIC, not to any individual broker or representative. Your money is also not being sent to any other company. So no, I don't believe that you should have concerns that your money was going to Brett's private company. Your contributions have now been changed to go to TIAA-CREF where you already have an established account from your participation before.

We have to be careful not to speculate on the particulars of the investigation because it is still ongoing and we do not know the details. There is no indication at this time that any money has been stolen. If the University is notified of ANY improprieties associated with your UA 403(b) account you will notified promptly. VALIC sent out a letter to all University participants to notify us that Brett was no longer a representative of the company. The letter also provided contact information for local representatives who are available to meet with employees.

Any certified financial advisor can be hired as a representative of a financial firm such as VALIC, or they have the option of operating independently and being licensed to sell a number of other products. Although it could be considered a conflict of interest, I imagine that there may be some advisors that hold both of these roles such as Brett did. The information you located on FINRA is public information and I am sure that the results of the investigation will also be duly noted on the site when it is completed.

Your participation in the University of Alabama 403(b) program with VALIC as the vendor is separate from any other financial or life insurance products that may have been offered or sold by Brett or Jessica LaFarerra. If you did meet with these representatives to discuss other investments or products outside of your VALIC 403(b) accounts you may want to review your records. If you have any documents that have contact information listed on them, you should contact those companies to make sure that you are aware of any programs that you are enrolled in or any products that you have purchased. You may also contact VALIC directly at █████████████ and a member of their staff can assist you with questions that you may have. We also have individual counseling sessions on campus with a member of the VALIC team. You can call █████████████ to schedule those appointments.

Please continue to raise your questions. We want to be sure that we can assist you in getting answers to your questions.

Hiron

BAL 17-02145000253

Hiron D. Stiell
Benefits Specialist
The University of Alabama
Human Resources Department
███████████████████
Phone: ████████████
Fax: ███████████
E-mail: █████████████████████ >
ROLL TIDE ROLL!


From: Scurlock, Jan [████████████████]
Sent: Thursday, January 28, 2016 8:42 AM
To: Hiron Stiell
Subject: Jan has question

Morning Hiron,

Please call me when you have time. I have a questions about our former Valic representative and his claim of Valic's so called special advisors (that looks like now was really him). Did deduction from my pay go to Valic and he somehow set it up to go to be diverted from them to one of his companies? Or was the deduction from my pay going some to Valic and then some to his company? If some of the deduction was going straight to one of his companies does this need to be stopped separately or will my changing from Valic to TIAA stop money going Valic and him?

Sounds to me with the Valic investigation that the money he was taking was not going to them to better manage my account and they had no special advisory group. This this money should have been going into my retirement account - not his pocket.

How many on campus did he talk into this and having us think this was Valic program? Is Valic going to own contact those that were? The document I found says he is under investigation but I don't think they want this to go public. Bad for business. Sounds like fraud on his part and Valic missed it. Should UA attorneys be made aware of this before everyone on campus finds out they have been taken advantage of? Especially since UA brought him and Valic to us. I want my money back and into my retirement account where it should be. My cell is ████████.

Ugh! Sorry to start your day off with this mess!

Jan

Jan Scurlock
███████████████████
█████████████████████

Exhibit 3

**VALIC FINANCIAL ADVISORS, INC.(42803)**     Rev. Form U5 (05/2009)

**Individual Name: LAFERRERA, BRETT ANDREW (2496912)**     U5 Amendment – Filing ID: 50356163

Filing Date: 11/26/2018

### NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING

Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.

### 1. General Information

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| BRETT | ANDREW | LAFERRERA | |
| **Firm CRD #:** | **Firm Name:** | **Firm NFA #:** | |
| 42803 | VALIC FINANCIAL ADVISORS, INC. | | |
| **Individual CRD #:** | **Individual SSN:** | **Individual NFA #:** | **Firm Billing Code:** |
| 2496912 | xxx-xx-xxxx | | 04-1009 |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 128021 | | 04-1009 | 3535 GRANDVIEW PARKWAY SUITE 200 BIRMINGHAM, AL 35243 United States | No | Located At | 03/08/2010 | 12/16/2015 |
| 473983 | | 04-1009 | 535 JACK WARNER PARKWAY SUITE L1 TUSCALOOSA, AL 35404 United States | No | Located At | 05/16/2011 | 12/16/2015 |
| 505587 | | 04-1009 | 733 TUSCALOOSA AVE SW BIRMINGHAM, AL 35211 United States | No | Located At | 05/22/2012 | 11/04/2015 |

### 2. Current Residential Address

| From | To | Street Address |
|---|---|---|
| 07/2016 | PRESENT | 1312 12th Street East Tuscaloosa, AL 35404 United States |

### 3. Full Termination

**Is this a FULL TERMINATION?**  ⦿ Yes  ○ No

Note: A "Yes" response will terminate ALL registrations with all SROs and all *jurisdictions*.

**Reason for Termination:** Voluntary

**Termination Explanation:**
If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

If amending the Reason for Termination and/or termination explanation, provide an explanation below: Amended to remove 'termination explanation' language not required to be included due to Reason for Termination being 'voluntary,' and not 'permitted to resign, discharged, or other

## 4. Date of Termination

**Date Terminated (MM/DD/YYYY): 12/16/2015**

A complete date of termination is required for *full termination*. This date represents the date the *firm* terminated the individual's association with the *firm* in a capacity for which registration is required.

For *partial termination*, the date of termination is only applicable to post-dated termination requests during the renewal period.

Notes: For *full termination*, this date is used by *jurisdictions*/SROs to determine whether an individual is required to requalify by examination or obtain an appropriate waiver upon reassociating with another *firm*.

The *SRO/jurisdiction* determines the effective date of termination of registration.

If amending the Date of Termination, provide an explanation below:

## 7. Disclosure Questions

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.**

**Disclosure Certification Checkbox (optional):** ⌐

By selecting the Disclosure Certification Checkbox, the *firm* certifies that (1) there is no additional information to be reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if needed, as it becomes available to the *firm*. Note: Use of "Disclosure Certification Checkbox" is optional

### Investigation Disclosure

|  | Yes | No |
|---|---|---|

**7A.** Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.)   ○ ◉

**Internal Review Disclosure**

|  | Yes | No |
|---|---|---|

**7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct?  ⦿  ○

**Criminal Disclosure**

|  | Yes | No |
|---|---|---|

**7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual:

    **1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*?  ○  ⦿

    **2.** *charged* with any *felony*?  ○  ⦿

    **3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?  ○  ⦿

    **4.** *charged* with a *misdemeanor* specified in 7(C)(3)?  ○  ⦿

**Regulatory Action Disclosure**

|  | Yes | No |
|---|---|---|

**7D.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?  ○  ⦿

**Customer Complaint/Arbitration/Civil Litigation Disclosure**

|  | Yes | No |
|---|---|---|

**7E.**  **1.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

    **(a)** is still pending, or;  ○  ⦿

    **(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or;  ○  ⦿

    **(c)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;  ○  ⦿

    **(d)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?  ○  ⦿

  **2.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that the individual was *involved* in one or more *sales practice violations*, and which

    **(a)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;  ○  ⦿

**(b)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?   ○ ◉

3. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(2) above, which:

   **(a)** would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or   ○ ◉

   **(b)** would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.   ◉ ○

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009**

4. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations*, and which:

   **(a)** was settled for an amount of $15,000 or more, or;   ○ ◉

   **(b)** resulted in an arbitration award of civil judgment against any named respondent (s)/defendant(s), regardless of amount?   ○ ◉

5. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an investment-related, consumer-initiated, arbitration claim or civil litigation not otherwise reported under question 7E(4) above, which:

   **(a)** would be reportable under question 14I(5)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or   ○ ◉

   **(b)** would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.   ○ ◉

**Termination Disclosure**

**Yes No**

**7F.** Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of:

   **1.** violating *investment-related* statutes, regulations, rules or industry standards of conduct?   ◉ ○

   **2.** fraud or the wrongful taking of property?   ○ ◉

   **3.** failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?   ○ ◉

**8. Signature**

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a

name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT

This section must be completed on all U5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

| **Person to contact for further information** | **Telephone # of person to contact** |
|---|---|
| Daniel Legaye | 713-342-7820 |

| **Signature of *Appropriate Signatory*** | **Date (MM/DD/YYYY)** |
|---|---|
| Keith Roberts | 11/19/2018 |

Signature _____

### 8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN SECTION 2 (CURRENT RESIDENTIAL ADDRESS) AND/OR IN PART II OF THE INTERNAL REVIEW DRP.

**Individual Signature**                **Date (MM/DD/YYYY)**

Signature _____

### Criminal DRP

No Information Filed

### Customer Complaint DRP

This Disclosure Reporting Page is an ◌ **INITIAL** or ◉ **AMENDED** response to report details for affirmative response(s) to Question 14I on Form U4

**Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":**

**Customer Complaint/Arbitration/Civil Litigation**                Rev. DRP (05/2009)

| ☐ 7E(1)(a) | ☐ 7E(2)(a) | ☐ 7E(3)(a) | ☐ 7E(4)(a) | ☐ 7E(5)(a) |
|---|---|---|---|---|
| ☐ 7E(1)(b) | ☐ 7E(2)(b) | ☑ 7E(3)(b) | ☐ 7E(4)(b) | ☐ 7E(5)(b) |
| ☐ 7E(1)(c) | | | | |
| ☐ 7E(1)(d) | | | | |

Click here to view question text

One matter may result in more than one affirmative answer to the above items. Use a single DRP to report details relating to a particular matter (i.e., a customer complaint/arbitration/CFTC reparation/civil litigation). Use a separate DRP for each matter.

DRP Instructions:

- Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations and civil litigation in which a customer alleges that the individual was *involved* in *sales practice violations* and the individual is not named as a party, as well as arbitrations/CFTC reparations and civil litigation in which the individual is named as a party).
- If the matter involves a customer complaint, or an arbitration/CFTC reparation or civil litigation in which a customer alleges that the individual was *salesinvolved* in *sales practice violations* and the individual is not named as a party, complete items 7-11 as appropriate.
- If a customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration/CFTC reparation in which the individual is a named party, complete items 12-16, as appropriate.
- If the matter involves a civil litigation in which the individual is a named party, complete items 17-23.
- Item 24 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation, civil litigation).

Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigation).

1. Customer Name(s):
   Jan Scurlock
2. A. Customer(s) State of Residence (select "not on list" when the customer's residence is a foreign address):
   Alabama
   B. Other state(s) of residence/detail:

3. Employing *Firm* when activities occurred which led to the customer complaint, arbitration, CFTC reparation or civil litigation:
   VFA Financial Advisors, Inc.
4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
   Customer alleged Rep may have diverted funds meant to be deposited into her retirement account to one of his companies.
5. Product Type(s): (select all that apply)

| | | |
|---|---|---|
| ☐ No Product | ☐ Derivative | ☑ Mutual Fund |
| ☐ Annuity-Charitable | ☐ Direct Investment-DPP & LP Interests | ☐ Oil & Gas |
| ☐ Annuity-Fixed | ☐ Equipment Leasing | ☐ Options |
| ☐ Annuity-Variable | ☐ Equity Listed (Common & Preferred Stock) | ☐ Penny Stock |
| ☐ Banking Products (other than CDs) | ☐ Equity-OTC | ☐ Prime Bank Instrument |
| ☐ CD | ☐ Futures Commodity | ☐ Promissory Note |
| ☐ Commodity Option | ☐ Futures-Financial | ☐ Real Estate Security |

☐ Debt-Asset Backed          ☐ Index Option              ☐ Security Futures
☐ Debt-Corporate             ☐ Insurance                 ☐ Unit Investment Trust
☐ Debt-Government            ☐ Investment Contract       ☐ Viatical Settlement
☐ Debt-Municipal             ☐ Money Market Fund         ☐ Other:

6. Alleged Compensatory Damage Amount:
   $ 0.00

   ○ Exact   ● Explanation (If no damage amount is alleged, the complaint must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000):
   Alleged damages are currently unknown.

If the matter involves a customer complaint, arbitration/CFTC reparation or civil litigation in which a customer alleges that the individual was *involved* in *sales practice violations* and the individual is <u>not</u> named as a party, complete items 7-11 as appropriate.

Note: Report in Items 12-16, or 17-23, as appropriate, only arbitrations/CFTC reparations or civil litigation in which the individual <u>is</u> named as a party.

7.  A. Is this an oral complaint?

    ○ Yes  ● No

    B. Is this a written complaint?

    ● Yes  ○ No

    C. Is this an arbitration/CFTC reparation or civil litigation?

    ○ Yes  ● No

    If yes, provide:
    i. Arbitration/reparation forum or court name and location:

    ii. Docket/Case#:

    iii. Filing date of arbitration/CFTC reparation or civil litigation (MM/DD/YYYY):
    D. Date received by/served on *firm* (MM/DD/YYYY):

    01/28/2016 ● Exact  ○ Explanation
    If not exact, provide explanation:

8. Is the complaint, arbitration/CFTC reparation or civil litigation pending?

    ○ Yes  ● No

    If "No", complete item 9.

9. If the complaint, arbitration/CFTC reparation or civil litigation is not pending, provide status:
    ☑ Closed/No Action          ☐ Withdrawn              ☐ Denied              ☐ Settled

    ☐ Arbitration Award/Monetary Judgment (for claimants/plaintiffs)
    ☐ Arbitration Award/Monetary Judgment (for respondents/defendants)
    ☐ Evolved into Arbitration/CFTC reparation (you are a named party)
    ☐ Evolved into Civil litigation (you are a named party)

If status is arbitration/CFTC reparation in which the individual is <u>not</u> a named party, provide details in item 7C.

If status is arbitration/CFTC reparation in which the individual is a named party, complete items 12-16.
If status is civil litigation in which the individual is a named party, complete items 17-23.

10. Status Date (MM/DD/YYYY):

   03/07/2016  ⊙ Exact  ○ Explanation
   If not exact, provide explanation:

11. Settlement/Award/Monetary Judgment:
   A. Settlement/Award/Monetary Judgment amount:
   $
   B. Individual Contribution Amount:
   $

If the matter involves arbitration or CFTC reparation in which the individual is a named respondent, complete items 12-16, as appropriate.

12. A. Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.):

   B. Docket/Case#:

   C. Date notice/process was served (MM/DD/YYYY):

   ○ Exact  ○ Explanation
   If not exact, provide explanation:

13. Is arbitration/ CFTC reparation pending?

   ○ Yes  ○ No

If "No", complete item 14.

14. If the arbitration/CFTC reparation is not pending, what was the disposition?

   ☐ Award to Applicant          ☐ Award to Customer ☐ Denied       ☐ Dismissed
   (Agent/Representative)
   ☐ Judgment (other than monetary)      ☐ No Action         ☐ Settled      ☐ Withdrawn

   ☐ Other :

15. Disposition Date (MM/DD/YYYY):

   ○ Exact  ○ Explanation
   If not exact, provide explanation:

16. Monetary Compensation Details (award, settlement, reparation amount):
   A. Total Amount:
   $
   B. Individual Contribution Amount:
   $

If the matter involves a civil litigation in which the individual is a defendant, complete items 17-23.

17. Court in which case was filed:

   ○ Federal Court    ○ State Court    ○ Foreign Court    ○ Military Court    ○ Other :
   A. Name of Court:

   B. Location of Court (City or County and State or Country):

C. Docket/Case#:

18. Date notice/process was served (MM/DD/YYYY):

     ○ Exact ○ Explanation
     If not exact, provide explanation:

19. Is the civil litigation pending?

     ○ Yes ○ No

If "No", complete item 20.

20. If the civil litigation is not pending, what was the disposition?

     ☐ Denied                 ☐ Dismissed              ☐ Judgment (other than monetary)

     ☐ Monetary Judgment to Applicant (Agent/Representative)      ☐ Monetary Judgment to Customer

     ☐ No Action            ☐ Settled               ☐ Withdrawn
     ☐ Other :

21. Disposition Date (MM/DD/YYYY):

     ○ Exact ○ Explanation
     If not exact, provide explanation:

22. Monetary Compensation Details (judgment, restitution, settlement amount):
     A. Total Amount:
     $
     B. Individual Contribution Amount:
     $

23. If action is currently on appeal:
     A. Enter date appeal filed (MM/DD/YYYY):

     ○ Exact ○ Explanation
     If not exact, provide explanation:

     B. Court appeal filed in:

     ○ Federal Court    ○ State Court    ○ Foreign Court    ○ Military Court    ○ Other :
     i. Name of Court:

     ii. Location of Court (City or County <u>and</u> State or Country):

     iii. Docket/Case#:

24. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final disposition(s). Your information must fit within the space provided.

**Internal Review DRP**

**Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":**

**Internal Review**                                    Rev. DRP (05/2009)

☑ **7B**

Click here to view question text

If the individual has been notified that the internal review has been concluded without formal action, complete items 4 and 5 of this DRP to update.

**PART I**

1. Notice Received From (Name of firm initiating the internal review):
   VALIC FINANCIAL ADVISORS, INC.

2. Date internal review initiated (MM/DD/YYYY):

   11/13/2015 ⦿ Exact   ○ Explanation

   If not exact, provide explanation:

3. Describe briefly the nature of the internal review. (The information must fit within the space provided):
   Associated with the Privacy Issue where possible HR issues within the office and the ongoing issues associated with Supervision.

4. Is internal review pending?

   ○ Yes   ⦿ No

   If no, complete item 5. If yes, skip to item 6.

5. Resolution Details:

A. Date internal review concluded (MM/DD/YYYY):

   04/13/2016 ⦿ Exact   ○ Explanation

   If not exact, provide explanation:

B. How was internal review concluded (provide details of the conclusion)?
   No further comment is provided in light of current litigation between the firm and the representative.

6. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the action, as well as the current status or final disposition. Your information must fit within the space provided.

**PART II**

**INDIVIDUAL SUBJECT MAY USE THIS SPACE FOR DETAILS TO AFFIRMATIVE ANSWERS OF ITEM 7(B) ONLY**

The individual who is the subject of the internal review may provide a brief summary of this event limited to 4000 characters. The summary may be submitted electronically to the Registration and Disclosure Department by the terminating firm or may be sent via hard copy to:

Registration and Disclosure
FINRA
P.O. Box 9495
Gaithersburg, MD 20898-9495

Note: **Section 8B. INDIVIDUAL ACKNOWLEDGEMENT AND CONSENT** of the Form U5 **requires** individuals to verify the accuracy and completeness of the information in Part II of the Internal Review DRP. An executed (i.e. signed and dated) acknowledgement and consent must be submitted with the summary.

**Investigation DRP**

No Information Filed

**Regulatory Action DRP**

No Information Filed

**Termination DRP**

This Disclosure Reporting Page is an ⬭ **INITIAL** or ⦿ **AMENDED**  response to report details for affirmative response(s) to **Question(s) 7F** on Form U5;
**Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":**

<table>
<tr><td colspan="2" align="center">**Termination**</td><td align="right">Rev. DRP (05/2009)</td></tr>
<tr><td>☑ **7F(1)**</td><td>☐ **7F(2)**</td><td>☐ **7F(3)**</td></tr>
</table>

**Click here to view question text**

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to the same termination.

1. Firm Name:
   VALIC FINANCIAL ADVISORS, INC.

2. Termination Type:
   Voluntary Resignation

3. Termination Date:

   12/16/2015 ⦿ Exact   ⬭ Explanation
   If not exact, provide explanation:

4. Allegation(s):
   The individual Voluntarily resigned while under suspension and investigation by the firm for sales practice concerns and violations of firm privacy policy and Code of Conduct.

5. Product Type(s): (select all that apply)

   | | | |
   |---|---|---|
   | ☑ No Product | ☐ Derivative | ☐ Mutual Fund |
   | ☐ Annuity-Charitable | ☐ Direct Investment-DPP & LP Interests | ☐ Oil & Gas |
   | ☐ Annuity-Fixed | ☐ Equipment Leasing | ☐ Options |
   | ☐ Annuity-Variable | ☐ Equity Listed (Common & Preferred Stock) | ☐ Penny Stock |
   | ☐ Banking Products (other than CDs) | ☐ Equity-OTC | ☐ Prime Bank Instrument |
   | ☐ CD | ☐ Futures Commodity | ☐ Promissory Note |
   | ☐ Commodity Option | ☐ Futures-Financial | ☐ Real Estate Security |
   | ☐ Debt-Asset Backed | ☐ Index Option | ☐ Security Futures |
   | ☐ Debt-Corporate | ☐ Insurance | ☐ Unit Investment Trust |
   | ☐ Debt-Government | ☐ Investment Contract | ☐ Viatical Settlement |
   | ☐ Debt-Municipal | ☐ Money Market Fund | ☐ Other: |

6. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the termination. Your information must fit within the space provided.

The firm has completed its compliance review. No further comment is provided in light of current litigation between the firm and the representative.

Exhibit 4

## Hiron Stiell

**From:**          Scurlock, ███████████
**Sent:**          Friday, January 29, 2016 3:57 PM
**To:**            Hiron Stiell
**Subject:**       You don't owe me an apology

Hiron,

You do not owe me an apology. You did the right thing.

I did not mind the phone call and as you said and I do believe that I spoke to the concerns that many of our employees may have. He was very nice and we also spoke about my contacts with Brett's wife Jessica Laferrera also Valic financial advisor. Turns out by my checking this morning she was terminated/discharged by Valic before Brett. Just so happened I got a Valic statement the day I talked to you in your office and my beneficiaries that were listed wrong and supposed to be changed were still wrong. Glad I am changing back to TIAA. I wish Valic no ill will but they still should have notified UA and employees about a change in advisors even if they wanted to leave why they were no longer here.

If you want to look...

Jessica Laferrera
http://brokercheck.finra.org/Individual/Summary/5612540

What a shame for them and upsetting for us. They could have done so well if they had done what was right.

I left you voice message but I know you are always too busy to answer it!

Have a great weekend!

Jan

**From:** Hiron Stiell ██████████████
**Sent:** Friday, January 29, 2016 2:04 PM
**To:** Scurlock, Jan
**Subject:** RE: call from Valic to Jan
**Importance:** High

Jan,

First off, please allow me to apologize. When I got your e-mail yesterday, I spoke to my managers about your concerns because I thought they had good merit and needed to be addressed. Before I replied, I wanted to try to get some answers. I shared the information you found on FINRA and told them of the concerns you had. I just wanted to make sure that any response I provided you was accurate because it was important that any information you received from this point on was true and not misleading in any way.

BAL 17-02145000248

Exhibit 5



**VALIC Retirement Services Company**
P.O. Box 15648
Amarillo, TX  79105

March 7, 2016



Re:  Accounts ███ and ███

Dear Ms. ███

Your additional concerns regarding the Guided Portfolio Service (GPS) fees assessed on the above referenced accounts have been forwarded to me for review.  I understand the importance of this matter and appreciate the opportunity to provide the following information.

I am pleased to inform you VALIC has initiated corrective activity to reverse all GPS fees assessed on accounts ███ and ███  Please allow 15 business days from your receipt of this letter for the correction to be completed.  Once completed, you can view the correction online at VALIC.com.

Additionally, please accept this letter as confirmation our research has found all payroll deductions taken by your employer have been successfully applied to your VALIC accounts as regular contributions, and there is no evidence of illicit activity regarding these payroll deductions.  Should you have any additional concerns regarding the conduct of VALIC or its representatives, please call our Contact Center at the number provided below, or provide a detailed request in writing to the following address:

VALIC Document Control
ATTN: Consumer Affairs
P.O. Box 15648
Amarillo, TX 79105-5648

M███ VALIC strives to provide quality service and personal attention.  Should you have any questions regarding this matter, please call our VALIC Contact Center at (800) 448-2542, Monday through Friday from 7:00 a.m. to 8:00 p.m. (CT), and a Customer Service Representative will be pleased to assist you.

Sincerely,

Justin Cure
Consumer Affairs

Exhibit 6

DOCUMENT 5

IN THE CIRCUIT OF TUSCALOOSA, ALABAMA

CIVIL ACTION NO. CV-2017-900115

BRETT LAFERRERA, an adult Alabama resident citizen and resident of Tuscaloosa County, Alabama,

Plaintiff,

vs.

JAN SCURLOCK, an adult Alabama resident citizen and resident of Tuscaloosa County, Alabama;

Defendant.

## AFFIDAVIT OF JAN SCURLOCK

**STATE OF ALABAMA**          )

**COUNTY OF TUSCALOOSA**      )

Comes now the affiant, Jan Scurlock, and on oath states the following:

1.     My name is Jan Scurlock, I am a resident of Tuscaloosa County, Alabama.

2.     I am over the age of 19 years and I have personal knowledge of the following.

3.     I am the Defendant named in the above lawsuit. I have read the allegations of the suit and particularly the allegations contained in paragraphs 4 through 10 of the Complaint and I am familiar with these allegations.

4.     I have never made any type of complaint, either verbal or written, to any agent, servant, employee or person of Variable Annuity Life Insurance Company or Valic Financial Advisors of and concerning Mr. Brett LaFerrera.

5.     I have never meet with any agent, servant, employee, or person with Variable Annuity Life Insurance Company or Valic Financial Advisors and made any type of complaint regarding and concerning Mr. Brett LaFerrera.

6.     In addition to reading the allegations contained in paragraphs 4 through 10 of the complaint on file in this action, I have also read exhibit 1 attached to this affidavit concerning Mr. Brett LaFerrera which I understand is his information concerning complaints maintained by the Financial Industry Regulatory Authority or FINRA.

1

7.      I never made the allegations or statements referenced in the January 28, 2016 customer dispute shown and contained in exhibit 1 to any agent, servant, employee, or person of Variable Annuity Life Insurance Company or Valic Financial Advisors of and concerning Mr. Brett LaFerrera.

8.      To my knowledge there has not and is not any money missing from my investment accounts with my employer the University of Alabama in anyway related to Mr. LaFerrera. To my knowledge there has not and is not any money which was deducted from my payroll and diverted to any companies which Mr. LaFerrera may own or have any type of ownership interests concerning.

        Further affiant sayeth not.

This __14__ day of February, 2017.

Jan Scurlock, Affiant.

STATE OF ALABAMA        )

COUNTY OF TUSCALOOSA        )

        Sworn to and subscribed before me this __14__ day of February, 2017, a notary of public in the State of Alabama, County of Tuscaloosa, Alabama who subscribes that Jan Scurlock, being made known to me to the be the person who attested to the facts contained in this instrument and who personally appeared before me this date, did on oath, attest to the facts and executed this instrument.

Notary Public

My commission expires: __12·18·17__

SEAL

MELODY LUNCEFORD
Notary Public, Alabama State At Large
My Commission Expires December 18, 2017

2

BAL 17-02145005463

Exhibit 7

| From: | Zailskas, Daniel |
|---|---|
| To: | JESSICA LAFERRERA |
| Subject: | RE: Award 16-00910 |
| Date: | Thursday, January 10, 2019 1:53:49 PM |

Hi Ms. LaFerrera:

My understanding is that the language in the Award section of the document—these recommendations shall apply to all previous and subsequent disclosures concerning this event— addresses this.

Thanks,
Dan

**From:** JESSICA LAFERRERA <laferrera@comcast.net>
**Sent:** Thursday, January 10, 2019 2:37 PM
**To:** Zailskas, Daniel <Daniel.Zailskas@finra.org>
**Subject:** [EXTERNAL] Award 16-00910


Mr. Zailskas

Thank you for your help along the way in this ordeal. I am not sure if my email is protocol or not, so please accept my apologies if I am not supposed to ask the following.

I have read over the award and there is no mention regarding the Scurlock complaint. This was a request in the original counterclaim, and was agreed to be heard in the settlement agreement and was addressed at the hearing. Is there a reason the panel issued no statement regarding that request?

Any clarification would be helpful.

Again, please tell the panel thank you for their patience and attention.

Jessica

Confidentiality Notice:: This email, including attachments, may include non-public, proprietary, confidential or legally privileged information. If you are not an intended recipient or an authorized agent of an intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained in or transmitted with this e-mail is unauthorized and strictly prohibited. If you have received this email in error, please notify the sender by replying to this message and permanently delete this e-mail, its attachments, and any copies of it immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

Exhibit 8

| From: | Crownover Standridge |
|---|---|
| To: | brad.almond@alacourt.gov |
| Cc: | laferrera@comcast.net |
| Subject: | Fwd: Declaratory Relief Scurlock Case |
| Date: | Monday, March 19, 2018 1:47:25 PM |

Dear Judge Almond,

To the extent that the Court can assist Mr. LaFerrera in his request, Ms. Scurlock, as we stated in the summary judgment motion hearing, would have no objection to his request for expungement.

Jim Standridge

---------- Forwarded message ----------

From: **Melody Lunceford** <melodylunceford@gmail.com>
Date: Mon, Mar 19, 2018 at 1:39 PM
Subject: Fwd: Declaratory Relief Scurlock Case
To: "CROWNOVERANDSTANDRIDGE@GMAIL.COM"
<CROWNOVERANDSTANDRIDGE@gmail.com>

Melody Lunceford
Legal Assistant
Crownover & Standridge
Attorneys at Law
2600 7th Street
Tuscaloosa, Alabama 35401
Telephone (205) 349-1727
Fax (205) 349-1779

CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED; ATTORNEY WORK PRODUCT
The information contained in this message and any attachment is attorney-client privileged and/or confidential information and is protected from disclosure. The information is intended for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution or copying of this message and any attachment is strictly prohibited. Please reply to the sender that you received this transmission in error and then delete it.

---------- Forwarded message ----------
From: **Brett LaFerrera** <Laferrera@comcast.net>
Date: Mon, Mar 19, 2018 at 10:48 AM
Subject: Declaratory Relief Scurlock Case
To: Melody Lunceford <melodylunceford@gmail.com>

Mr. Standridge,

I am sure you are aware that Judge Almond granted your motion to dismiss. However, he made no ruling on my request for declaratory relief seeking expungement of the complaint alleged to have been made by Ms. Scurlock. At the hearing you confirmed that no money was missing from Ms. Scurlock's accounts (which is supported by multiple documents) and you informed the court that your client did not oppose the declaratory relief I sought. In fact, I seem to recall you joined me in asking the court to expunge the complaint from my record.

Since no ruling was made, I spoke with Judge Almond's office and they have requested I submit a motion specific to this topic. Would you confirm in writing that Ms. Scurlock does not oppose the court expunging the alleged complaint from my record. I do not believe the arguments were recorded so I have no transcript to reference. As such, I am respectfully seeking your help.

Thank you.

Brett

--
Crownover & Standridge
Attorneys at Law
2600 7th Street
Tuscaloosa, Alabama 35401
Telephone (205) 349-1727
Fax (205) 349-1779

CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED; ATTORNEY WORK PRODUCT
The information contained in this message and any attachment is attorney-client privileged and/or confidential information and is protected from disclosure. The information is intended for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution or copying of this message and any attachment is strictly prohibited. Please reply to the sender that you received this transmission in error and then delete it.

Exhibit 9



Print

## 2080. Obtaining an Order of Expungement of Customer Dispute Information from the Central Registration Depository (CRD) System

(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.

(b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below.

(1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral findings that:

(A) the claim, allegation or information is factually impossible or clearly erroneous;

(B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or

(C) the claim, allegation or information is false.

(2) If the expungement relief is based on judicial or arbitral findings other than those described above, FINRA, in its sole discretion and under extraordinary circumstances, also may waive the obligation to name FINRA as a party if it determines that:

(A) the expungement relief and accompanying findings on which it is based are meritorious; and

(B) the expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements.

(c) For purposes of this Rule, the terms "sales practice violation," "investment-related," and "involved" shall have the meanings set forth in the Uniform Application for Securities Industry Registration or Transfer ("Form U4") in effect at the time of issuance of the subject expungement order.

---

Amended by SR-FINRA-2009-016 eff. Aug. 17, 2009.
Amended by SR-NASD-2003-200 eff. April 12, 2004.
Adopted by SR-NASD-2002-168 eff. April 12, 2004.

**Selected Notice:** 04-16, 09-33.

---

© FINRA. All rights reserved.